UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALDO S. DOMINGUEZ,

                            Plaintiff,

        -against-

BOARD OF EDUCATION OF THE YONKERS
CITY SCHOOL DISTRICT; YONKERS CITY
SCHOOL DISTRICT; EDWIN M. QUEZADA,
ED.D., *individually and as Superintendent of the
Yonkers City School District*; and TED VON
HOENE, *individually and as Human Resources
Manager of the Yonkers City School District*,

                            Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 07/16/2024

No. 23 Civ. 2460 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Aldo S. Dominguez brings this action against Defendants Board of Education of the Yonkers City School District ("BOE"); Yonkers City School District (the "District"); Edwin M. Quezada, Ed.D., individually and as Superintendent of the Yonkers City School District; and Ted von Hoene, individually and as Human Resources Manager of the Yonkers City School District (collectively, "Defendants"). Plaintiff asserts claims under (1) the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. ("ADA"), the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq*. ("RA"), and the New York State Human Rights Law, Executive Law § 290 *et seq*. ("NYSHRL").

Presently before the Court is Defendants' motion to dismiss Plaintiff's First Amended Complaint ("FAC"). (ECF No. 33.) For the following reasons, the Court grants Defendants' motion to dismiss.

**BACKGROUND**

I.     **Factual Allegations**

The following facts are drawn from Plaintiff's First Amended Complaint ("FAC") and are taken as true for the purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff was assigned to teach English as a New Language ("ENL") in a public elementary school for the 2020-2021 school year. (FAC ¶ 26.)  His position required him to "push-in" to other teacher's classrooms to provide ENL instruction, during which the ordinary classroom teacher, teaching assistants, and/or teacher aids would remain in the classroom. (*Id.* ¶¶ 27-28.) From March 2020 through the end of the 2019-2020 school year in June 2020, Yonkers City School District (the "District") closed all of its schools to in-person instruction due to the COVID-19 pandemic. (*Id.* ¶ 32.) During this period, Plaintiff successfully performed his job duties—including the virtual instruction of students—via telework. (*Id.* ¶ 33.) For the first month of the 2020-2021 school year, District students engaged in remote learning before returning to in-person instruction. (*Id.* ¶¶ 45, 47.)

Plaintiff alleges he is disabled by physical impairments. (*Id.* ¶ 29.) Specifically, Plaintiff has received three separate kidney transplants at 14, 27, and 40 years old. (*Id*. ¶ 29.) He is also a cancer survivor who also suffers from atrial fibrillation and hypertension. (*Id*.) Due to his health conditions and the treatments thereof, he is severely immunocompromised and will be for the rest of his life. (*Id*.) His disabilities limit major life activities including, but not necessarily limited to, breathing, performing manual tasks, walking, lifting, working, and interacting with others. (*Id.* ¶ 30.) Specifically, for example, Plaintiff's atrial fibrillation and hypertension limit his ability to engage in physical movement and activity, as well as routine strenuous tasks, due to resulting fatigue, shortness of breath, chest pain, and the danger of fainting. (*Id*.) Moreover, his kidney

disease, status as a transplant recipient, and status as a cancer survivor, limit his ability to interact with others due to the impact on, and threat to, his immune system. (*Id*.) His co-morbidities place him at high risk of severe illness or death from infection with COVID-19 according to the Centers for Disease and Control Prevention. (*Id.* ¶ 31.)

Plaintiff's physicians advised him that telework would be the only reasonable accommodation for him during the continuing COVID-19 pandemic, as that would be the only way to ensure the proper social distance needed to avoid being infected with COVID-19. (*Id.* ¶ 36.) Consequently, for the 2020-2021 school year, Plaintiff requested a telework accommodation from the District to mitigate his risk of contracting the COVID-19 virus and becoming seriously ill or dying due to his underlying medical conditions. *(Id.* ¶ 37.)  Beginning on or about August 4, 2020, and throughout the 2020-2021 school year, Plaintiff made repeated requests for telework accommodations as the District's instructional model changed, but the District's Human Resources Manager von Hoene rejected Plaintiff's requests. (*Id.* ¶¶ 39-40.) The District also failed to provide him with basic protective measures such as an N95 mask, face shields, an exclusive bathroom, and air filter as was previously discussed with, and agreed to by, the District. (*Id.* ¶ 43.)  Due to the denial of his telework accommodation and the failure to provide him basic protective measures, Plaintiff began a medical leave of absence on September 3, 2020. (*Id.* ¶ 44.) Plaintiff ultimately used approximately 128 sick days during the 2020-2021 school year to cover his forced medical leave. (*Id.* ¶ 57.)

Plaintiff alleges the District permitted non-disabled teachers to telework throughout the 2020-2021 school year. Specifically, the District (1) assigned non-disabled reading teachers exclusive virtual teaching assignments where instruction was provided to students online from an empty classroom (*id.* ¶ 48); (2) closed to in-person instruction those schools that had acute

outbreaks of COVID-19 throughout the school year and permitted non-disabled students at those schools to telework (*id.* ¶ 49); and (3) permitted non-disabled teachers quarantined for confirmed or suspected COVI-19 infection to telework during their quarantine periods (*id.* ¶ 50). The District did not offer any of these assignments to Plaintiff. (*Id.* ¶¶ 48-50.) On September 9, 2020, Superintendent Quezada confirmed that it was the District's policy to refuse telework as an accommodation for disabled persons. (*Id.* ¶ 51.)

On March 5, 2021, Plaintiff filed a charge of discrimination with the Equal Opportunity Commission ("EEOC") raising the same claims of discrimination described above. (*Id.* ¶17.) On January 13, 2023, the EEOC issued a Right to Sue letter. (*Id.* ¶ 19.) On or about January 29, 2021, Plaintiff served a Notice of Claim on Defendants asserting the same claims. (*Id.*¶ 20.)

## II.    Procedural History

Plaintiff commenced this action on March 23, 2023. (ECF No. 1.) On June 19, 2023, Defendants filed a letter motion seeking leave to move to dismiss Plaintiff's Complaint. (ECF No. 21.) On June 27, 2023, Plaintiff filed a letter in response opposing leave. (ECF No. 24.) On September 8, 2023, after the Court granted Defendants leave to file a motion to dismiss and set a briefing schedule, Plaintiff sought leave to file a First Amended Complaint, which the Court granted the next day. (ECF Nos. 28-29.) On September 13, 2023, Plaintiff filed his First Amended Complaint.

On October 11, 2023, Defendants again sought leave to file a motion to dismiss Plaintiff's First Amended Complaint, which the Court granted. (ECF Nos. 32-33.) On January 24, 2024, the parties filed their respective papers on Defendants' motion to dismiss: Defendants filed their motion to dismiss (ECF No. 37), Declaration of Joanna M. Topping in Support (ECF No. 38), Memorandum of Law in Support (ECF No. 39, "Defs. Mem.") and Reply (ECF No. 40, "Reply");

and Plaintiff filed his opposition (ECF No 36, "Pl. Opp.").

## LEGAL STANDARD

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Factual allegations must "nudge [a plaintiff's] claim from conceivable to plausible." *Twombly*, 550 U.S. at 570. A claim is plausible when the plaintiff pleads facts which allow the court to draw a reasonable inference the defendant is liable for the unlawful activity alleged. *Iqbal*, 556 U.S. at 678. "In considering a motion to dismiss for failure to state a claim, the district court is normally required to look only to the allegations on the face of the complaint . . . the court may [also] consider documents that are attached to the complaint, incorporated in it by reference, [or] integral to the complaint." *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (quotation marks omitted).

In assessing the sufficiency of the claims, the court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). While legal conclusions may provide the "framework of a complaint," "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678-79. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 678.

## DISCUSSION

Plaintiff alleges disability discrimination in violation of the ADA, RA, and NYSHRL due to Defendants' failure to provide a reasonable accommodation and to engage in the interactive process required by law. (FAC ¶¶ 62-80.) Defendants argue that Plaintiff's claims under the ADA

5

and the RA must be dismissed because: (1) the FAC fails to sufficiently allege that Plaintiff is disabled within the meaning of those statutes, and even if it did, (2) the FAC's allegations establish that Plaintiff's requested accommodation for telework was not reasonable, as it would eliminate his job's essential function of providing in-person instruction and supervision to students. (Defs. Mem. at 5.) In the event the Court dismisses the ADA and RA claims, Defendants further argue the Court should decline to exercise supplemental jurisdiction over Plaintiff's NYSHRL claims. (*Id.*) Otherwise, Defendants argue dismissal of the NYSHRL claims is appropriate (1) for the same reasons that his federal claims should be dismissed and (2) because those claims are untimely. (*Id.* at 12-14.)

For the following reasons, the Court grants Defendants' motion to dismiss Plaintiff's FAC.

## I.      Rehabilitation Act and ADA Claims

"The standards under the [ADA and Rehabilitation Act] are generally the same." *Langella v. Mahopac Cent. Sch. Dist.*, No. 18-CV-10023 (NSR), 2023 WL 2529780, at *3 (S.D.N.Y. Mar. 15, 2023) (citing *Wright v. N.Y.S. Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016)). The Rehabilitation Act prohibits disability-based discrimination by government agencies and other recipients of federal funds. Section 504(a) of the Rehabilitation Act provides:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a).

The ADA prohibits an employer from discriminating against an employee "because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). As defined by the ADA, "discrimination"

includes, *inter alia*,

> not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless . . . [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the . . . [employer's] business.

*Id.* § 12112(b)(5)(A) (emphasis added). "[O]therwise qualified" means that the individual, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8).

Therefore, to plead a *prima facie* claim of discrimination under the ADA or Rehabilitation Act, a Plaintiff must allege that "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action(s) because of his disability. *See McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013). That said, at the pleading stage, "a plaintiff need only give plausible support to a minimal inference of discriminatory motivation." *Langella v. Mahopac Cent. Sch. Dist.*, No. 18-CV-10023 (NSR), 2023 WL 2529780, at *3 (S.D.N.Y. Mar. 15, 2023) (citing *Dooley v. Jetblue Airways Corp.*, 636 Fed. Appx. 16, 19–21 (2d Cir. 2015)).

Here, Plaintiff alleges he is "disabled" and Defendants failed to provide a "reasonable accommodation" under the ADA and RA. (FAC ¶¶ 62-80). On the other hand, Defendants allege that Plaintiff's claims under the ADA and the RA must be dismissed because: (1) the FAC fails to sufficiently allege that plaintiff is disabled within the meaning of those statutes; and, even if it did, (2) the FAC's allegations establish that plaintiff's requested accommodation of working from home was not reasonable, as it would eliminate his job's essential function of providing in-person instruction and supervision to students. The Court addresses each argument in turn.

A. *"Disabled" under the ADA and RA*

"Under the ADA, a qualifying disability must limit a major life activity and the limitation must be substantial." *Id.* at \*3 (citing *Laface v. E. Suffolk BOCES*, No. 2:18-CV-1314 (ADS) (AKT), 2020 WL 2489774, at \*10 (E.D.N.Y. May 18, 2020)). The ADA contains a non-exhaustive list of "major life activities," which includes "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2). "Factors to consider in determining whether a major life activity is substantially limited include: the nature and severity of the impairment; its duration or expected duration; and the existence of any actual or expected permanent or long term impact." *O'Hara v. Bd. of Coop. Educ. Servs., S. Westchester*, No. 18-CV-8502 (KMK), 2020 WL 1244474, at \*12 (S.D.N.Y. Mar. 16, 2020) (citing *Capobianco v. City of New York*, 422 F.3d 47, 57 (2d Cir. 2005)). It is "well-established that an impairment does not significantly restrict a major life activity if it results only in mild limitations." *Collins v. Giving Back Fund*, No. 18 Civ. 8812 (CM), 2019 WL 3564578, at \*13 (S.D.N.Y. Aug. 6, 2019) (quoting *Whalley v. Reliance Grp. Holdings, Inc.*, No. 97 Civ. 4018(VM), 2001 WL 55726, at \*4 (S.D.N.Y. Jan. 22, 2001)). Moreover, it is not enough for a plaintiff to only "allude to her [or his] impairments in her [or his] pleadings; she [or he] must plead how those impairments significantly impacted her [or his] major life activities." *Id*. Merely having an impairment that affects a major life activity does not make one disabled for purposes of the ADA." *Kelly v. Rice*, 375 F. Supp. 2d 203, 207 (S.D.N.Y. 2005).

The Department of Health and Human Services promulgated regulations under the Rehabilitation Act that define a "handicapped person" as "any person who (i) has a physical or mental impairment which substantially limits one or more major life activities, (ii) has a record

of such an impairment, or (iii) is regarded as having such an impairment," 45 C.F.R. § 84.3(j)(1), and a "qualified handicapped person" as one who "with reasonable accommodation, can perform the essential functions of the job in question." 45 C.F.R. § 84.3(l)(1).

Here, Defendants argue Plaintiff fails to sufficiently plead his condition substantially impaired major life activities. (*Id*.) "The term 'substantially limits' is construed broadly in favor of expansive coverage and is not meant to be a demanding standard." *Kelly v. New York State Off. of Mental Health*, 200 F. Supp. 3d 378, 393 (E.D.N.Y. 2016) (citing 29 C.F.R. §18 1630.2(j)(1)(i)). That said, to assert an ADA claim, a plaintiff must still adhere to the pleading requirements of Federal Rule of Civil Procedure 8. *Id*. The Court agrees that Plaintiff has failed to plead his health conditions substantially limited major life activities.

Plaintiff alleges that his disabilities limit major life activities, including but not limited to breathing, performing manual tasks, walking, lifting, working, and interacting with others. (FAC ¶ 30.) He further alleges that atrial fibrillation and hypertension limited his ability to engage in physical movement and activity, as well as routine strenuous tasks, due to resulting fatigue, shortness of breath, chest pain, and the danger of fainting. (*Id*.) Moreover, Plaintiff alleges that his kidney disease, status as a transplant recipient, and status as a cancer survivor limited his ability to interact with others due to the impact on, and threat to, his immune system. (*Id*.)

It is well-established that a plaintiff must do more than assert "conclusory statements" to adequately assert a substantial limitation. *Kelly*, 200 F. Supp. 3d at 393. Additionally, allegations that "merely track the language of the statute" or "[v]ague, conclusory assertions without details on how a plaintiff's condition actually affects a major life activity are insufficient" to survive a motion to dismiss. *Cain v. Mandl Coll. of Allied Health*, No. 14-CV-1729 (ER), 2017 WL 2709743, at *4 (S.D.N.Y. June 22, 2017); *see also Shine v. New York City Hous. Auth.*, No. 19-

CV-04347 (RA), 2020 WL 5604048, at *7 (S.D.N.Y. Sept. 18, 2020) (noting that "courts in this Circuit have established that plaintiffs must plead more than vague or conclusory allegations regarding 'difficulty' or 'trouble' conducting a major life activity."); *Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 69 (2d Cir. 2014). Plaintiff merely provides conclusory statements about his condition without specifically explaining how his impairments, such as his immune system issues or atrial fibrillation and hypertension, significantly impacted his major life activities. Plaintiff's assertions that his medical conditions limited his ability to engage in "physical movement and activity" including "routine strenuous tasks" and to "interact" with others are far too vague to plausibly state a disability. Plaintiff fails to detail the nature and severity of the impairment, its duration or expected duration, and the existence of any actual or expected permanent or long-term impact. Consequently, Plaintiff has failed to plead he is "disabled" under the ADA and RA.

   B. *"Reasonable Accommodations" under the ADA and RA*

Defendants argue the Court should dismiss Plaintiff's disability discrimination claim because Plaintiff fails to plead he could perform the essential functions of his job. (Defs. Mem. at 8-11.) "Discrimination in violation of the ADA includes, inter alia, not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." *Sheng v. M&TBank Corp.*, 848 F.3d 78, 86 (2d Cir. 2017). The term "reasonable accommodation" may include (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals

10

with disabilities. 42 U.S.C. § 12111(9)(B). "In discrimination claims based both on adverse employment actions and on failures to accommodate, the plaintiff 'bears the burdens of both production and persuasion as to the existence of some accommodation that would allow [him] to perform the essential functions of [his] employment.' 591 U.S. 732.

"A qualified individual is an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id*. (citing 42 U.S.C. § 12111(8)). "In evaluating whether a particular job function is essential, this Court considers the employer's judgment, written job descriptions, the amount of time spent on the job performing the function, the mention of the function in a collective bargaining agreement, the work experience of past employees in the position, and the work experience of current employees in similar positions." *Stevens v. Rite Aid Corp.*, 851 F.3d 224, 229 (2d Cir. 2017). "In approaching this inquiry, 'a court must give considerable deference to an employer's judgment regarding what functions are essential for 'service in a particular position.'" 42 U.S.C.A. § 12101 et seq. "Of course, a reasonable accommodation can never involve the elimination of an essential function of a job." *McMillan v. City of New York*, 711 F.3d 120, 127 (2d Cir. 2013).

Here, Defendants argue Plaintiff's requested accommodation to telework was unreasonable because it would eliminate an essential function of his job, namely the in-person instruction and supervision of students. (Defs. Mem. at 10.) In opposition to this argument, Plaintiff alleges that "the nature of his ENL assignment . . . would have allowed him to 'push-in' to in-person classes remotely while the ordinary classroom teacher and/or aides and assistants remained in the physical classroom." (FAC ¶ 47.) This single, conclusory assertion is insufficient to plausibly establish Plaintiff could perform the essential functions of his job. *Stanley v. City Univ. of New York*, No. 18 CIV. 4844 (PAE), 2023 WL 2714181, at *20 (S.D.N.Y. Mar. 30, 2023), *aff'd sub nom. Stanley*

11

*v. Phelon*, No. 23-731-CV, 2024 WL 1453872 (2d Cir. Apr. 4, 2024) (conclusory assertion that plaintiff could perform his job duties remotely as university "emerged from a pandemic and resumed more in-person classes and activities" insufficient to plausibly state failure to accommodate claim).

Plaintiff alleges that he successfully performed the essential functions of his job—including instruction—from his home from March 2020 through the end of the 2019-2020 school year. (FAC ¶¶ 33-34.) However, that Plaintiff could perform his essential job functions while working remotely during the first phase of the COVID-19 pandemic—when leaders, officials, and institutions were in lockdown and just beginning to understand the nature of the outbreak—does not support his assertion that he could continue to perform his essential job functions months or even a year thereafter. This is particularly true given that the District determined the return to in-person instruction was appropriate.

Likewise, Plaintiff relies primarily on telework assignments being offered to non-disabled teachers and staff to show the reasonableness of his telework accommodation request. (FAC ¶¶ 47-50.) There are two issues with this line of argument. First, Plaintiff fails to demonstrate that the job functions of those individuals permitted to work remotely were comparable to his job functions. *See Stanley*, 2023 WL 2714181, at *20. Furthermore, the examples where the District provided telework accommodations to non-disabled teachers and staff occurred in the context of confirmed or suspected COVID-19 infections. (*See* FAC ¶¶ 49-50.) Remote work accommodations in that context—for a limited duration and applied neutrally depending on infection status—cannot be applied in the context of an individual seeking an indefinite amount of disability accommodations due to his medical conditions.

Finally, Plaintiff alleges Defendants denied him reasonable accommodation when he

reported to work on September 1 and September 2, 2020. (*See id*. ¶ 43.) Specifically, Plaintiff alleges that the District failed to provide him with basic protective measures such as an N95 mask, face shields, an exclusive bathroom, and an air filter, as previously discussed with and agreed upon by the District. (*id.*; Pl. Opp. at 10-11.) To establish a prima facie case for failure to provide a reasonable accommodation, Plaintiff must show that his employer refused to make a reasonable accommodation. *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020). However, Plaintiff fails to allege he requested such accommodation and that the District denied his request. Accordingly, Plaintiff's allegations that Defendants failed to provide protective measures are insufficient to state a claim.

Because Plaintiff fails to plead telework and protective measures were a reasonable accommodation, Plaintiff also fails to allege Defendants' failed to engage in an interactive process. *Stanley*, 2023 WL 2714181, at *19 ("An employee may not recover based on his employer's failure to engage in an interactive process if he cannot show that a reasonable accommodation existed at the time of his dismissal.") (citing *McElwee v. County of Orange*, 700 F.3d 635, 642 (2d Cir. 2012). Plaintiff thus fails to sufficiently allege that Plaintiff can perform the essential in-person function of his job with a reasonable accommodation. Therefore, the Court dismisses Plaintiff's reasonable accommodation claim under the ADA and RA.

## II.     SHRL Claims

The NYSHRL prohibits discrimination based on an individual's disability. N.Y. Exec. Law §§ 290 *et seq*. NYSHRL claims are governed by the same legal standard as ADA and RA claims. *Frilando v. New York City Transit Auth.*, 463 F. Supp. 3d 501, 514 (S.D.N.Y. 2020) ("Courts apply the same standard for failure to accommodate cases under the ADA, [RA and] NYSHRL.") (citation omitted); *see also Bebry v. ALJAC LLC*, 954 F. Supp. 2d 173, 177 (E.D.N.Y. 2013) (citing *Rodal v. Anesthesia Group of Onondaga*, 369 F.3d 113, 117 n. 1 (2d Cir.2004)) ("Claims under

Title III of the ADA and the NYSHRL are governed by the same legal standard.").

Plaintiff's disability discrimination claim under the NYSHRL is based on the same factual allegations as his ADA and RA claims. For the same reasons the Court dismisses Plaintiff's ADA and RA claims, the Court dismisses Plaintiff's NYHSRL claims. As to Plaintiff's remaining NYSHRL claims,[1] having dismissed Plaintiff's federal claims over which the Court has original jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. *Walker v. NYS Just. Ctr. for Prot. of People with Special Needs*, 493 F. Supp. 3d 239, 251 (S.D.N.Y. 2020) ("A federal district court may decline to exercise supplemental jurisdiction over state-law claims when it 'has dismissed all claims over which it has original jurisdiction.'") (citing 28 U.S.C. § 1367(c)(3)). Having dismissed Plaintiff's NYSHRL for the reasons discussed above, the Court declines to reach any other grounds of dismissal.

### III.    Leave to Amend

"Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Matima v. Celli,* 228 F.3d 68, 81 (2d Cir.2000) (internal quotation marks and citation omitted). "A *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir.2010) (internal brackets and quotation marks omitted). However, "leave to amend a complaint may be denied when amendment would be futile." *Tocker v. Philip Morris Cos.,* 470 F.3d 481, 491 (2d Cir.2006).

---

[1] In his opposition, Plaintiff clarifies that his Fourth Cause of Action against Defendants Quezada and von Hoene for aiding and abetting in discrimination are asserted under the NYSHRL, and not the ADA or the RA. (Pl. Opp. at 11.)

Given that Plaintiff's factual allegations are particularly sparse, the Court finds it appropriate for Plaintiff to have the opportunity to plead additional facts to flesh out his claims. Moreover, Plaintiff's FAC was the first pleading for which motion practice occurred. Accordingly, Plaintiff's claims are dismissed without prejudice and Plaintiff is granted leave to file a Second Amended Complaint.

**CONCLUSION**

The Court grants Defendants' motion to dismiss and dismisses Plaintiff's First Amended Complaint without prejudice.

Plaintiff is granted leave to file a Second Amended Complaint by August 16, 2024, consistent with this Order. Plaintiff is advised that the Second Amended Complaint will replace, not supplement, the First Amended Complaint, and so any claims that he wishes to pursue must be included in, or attached to, the Second Amended Complaint. Should Plaintiff file a Second Amended Complaint, Defendants are directed to answer or otherwise respond by September 6, 2024. If Plaintiff fails to file a Second Amended Complaint within the time allowed, those claims that were dismissed without prejudice will be deemed dismissed with prejudice.

The Clerk of Court is further directed to terminate the motion at ECF No. 37.

Dated:  July 16, 2024                                        SO ORDERED.
        White Plains, NY

                                        _____

                                              NELSON S. ROMÁN
                                        United States District Judge

15